```
                                                     Pages 1 - 10

                      UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA

                BEFORE THE HONORABLE CHARLES R. BREYER

RONALD S. ARENDAS,                  )
                                    )
          Plaintiff,                )
                                    )
  VS.                               ) NO. C 11-6462 CRB
                                    )
CITIBANK, INC., et al,              )
                                    )
                                    ) San Francisco, California
          Defendants.               ) Friday
                                    ) January 18, 2013
_____) 10:00 a.m.
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**For Plaintiff:**          MCCUNE WRIGHT, LLP\
                            2068 Orange Tree Lane
                            Suite 216
                            Redlands, California 92374
                      **BY: RICHARD MCCUNE, ESQ.**


**For Defendants:**         STROOK STROOK & LAVAN, LLP
                            2029 Century Park Eats
                            16th floor
                            Los Angeles, California 90067
                      **BY: LISA SIMONETTI, ESQ.**




*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 *Official Reporter - US District Court*
                 *Computerized Transcription By Eclipse*

```
 1                    P R O C E E D I N G S
 2   JANUARY 18, 2013                                    10:11 a.m.
 3
 4          THE CLERK:  Calling case C11-6462, Ronald Arendas
 5   versus CitiBank.
 6       Appearances, counsel.
 7          MS. SIMONETTI:  Good morning, your Honor.  Lisa
 8   Simonetti for defendant Citibank.
 9          MR. McCUNE:  Good morning, your Honor.  Richard
10   McCune for the plaintiffs.
11          THE COURT:  All right.  So this matter is on for
12   summary judgment.
13       Ms. Simonetti, through great diligence I was able to find
14   the provision in the client manual which you believe addresses
15   the subject, right?
16       You hand this out to everybody, right?
17          MS. SIMONETTI:  Yes.
18          THE COURT:  This little document when they get their
19   credit card or debit card or whatever you want --
20          MS. SIMONETTI:  It's a checking account.
21          THE COURT:  Checking account, thank you.
22       Okay.  They get their checking account along with it.
23   They get a document called "Client Manual Consumer Accounts,
24   Including Our Privacy Notices."
25       How many pages do you think that runs?
```

1          **MS. SIMONETTI:**  I think it runs quite a few pages,
2    your Honor --
3          **THE COURT:**  And by "quite a few," you would say over
4    40?
5          **MS. SIMONETTI:**  I'm sure.
6          **THE COURT:**  As a matter of fact, you might say 43
7    pages.
8          **MS. SIMONETTI:**  I wouldn't disagree with you.
9          **THE COURT:**  And how big is that print?  How big is
10   this print?  Little.
11         **MS. SIMONETTI:**  The actual print size is probably not
12   that, but it's -- you know, it's an ordinary piece of paper.
13      And I completely understand where you're going, your
14   Honor, but --
15         **THE COURT:**  Where I'm going isn't good for you.
16         **MS. SIMONETTI:**  You know, I wasn't really feeling
17   that.
18      But the Client Manual, much of it is actually driven by
19   federal --
20         **THE COURT:**  Lawyers.
21         **MS. SIMONETTI:**  No, federal regulation.  A lot of it
22   is mandatory.  And it grows and grows.
23      And the font size is actually something that tracks many
24   of the provisions of state law that dictate font size.
25         **THE COURT:**  Okay.  Fair enough.  Fair enough.

1       However, it seems to me that the reason for the time --
2  why you have to do something within a period of time is, in
3  fact, because -- there are two reasons that I can think of.
4       One reason would be that the information about the
5  erroneous charge would be in the hands of the consumer, as
6  distinct from the hands of the bank.  It is the consumer who
7  knows, my car was stolen and then that may be a separate thing.
8  Enough said on that.
9       The second reason -- and we know that's not true here.
10          **MS. SIMONETTI:**  Right.
11          **THE COURT:**  Okay.  So then we have a second reason,
12  and the second reason would be because in the interests of
13  establishing some regularity with respect to bank practices, a
14  virtue, you know, a commercially acceptable justification for
15  it.  The bank wants to be put on notice as to a consumer's
16  objection to A, B or C.
17       Okay.  We don't have the first and I think we have a
18  limited value of the second.  And the reason I think it's
19  limited is because what we have at issue here is a uniform bank
20  policy right across the board saying that when you use your
21  debit -- is it a debit card?
22          **MS. SIMONETTI:**  Debit card, yes.
23          **THE COURT:**  (Continuing) -- debit card and you don't
24  have sufficient funds in your account, we will charge you X or
25  Y or Z or something like that.  Maybe that's appropriate.  I'm

1 not passing on that.

2     And you say, well, all right, it's important that the bank
3 get this thing resolved. But is it -- it doesn't seem to me,
4 it's sort of important to get this resolved consumer by
5 consumer.

6     That is to say -- well, of course, consumers drive any
7 policy and the bank drives any policy of the bank. We're
8 talking about consumers. We're talking about a single bank.

9     It's not the same sort of thing. Doesn't fall in the same
10 category, I think, as a policy that needs to be resolved as of
11 a particular date. Because something will happen, something
12 will go away, something will adversely affect.

13     Though, there is some of that. I'll give you that. Some
14 of it in.

15     Anyway, I think -- and this is how I'm sort of addressing
16 the issue without addressing other aspects of the issue -- that
17 it's unconscionable to enforce this against the consumer under
18 these circumstances.

19     And that's one reason why I would deny your summary
20 judgment motion.

21     I have some other thoughts on it, but I don't know how
22 important those other thoughts are --

23         **MS. SIMONETTI:** Well, let me just --

24         **THE COURT:** Because there are some ambiguities and so
25 forth.

1        Is it really an electronic transfer of funds?  Is it --

2            **MS. SIMONETTI:** It's not.

3            **THE COURT:** Does it fit category A, B, C and so
4    forth?

5        Anyway, that's my thinking and I would be delighted to
6    hear your argument.

7            **MS. SIMONETTI:** Okay.  Well, I think that this is --
8    this is plaintiff's own theory.

9        I think that customers understand perfectly well that if
10   they overdraw their accounts by any manner, they are going to
11   be assessed an overdraft fee.

12       So I think that applies to checks and ACH's and debit card
13   transactions.  I think this is a pretty commonly known fact.

14           **THE COURT:** By the way, you know, I'm not ruling on
15   that.

16           **MS. SIMONETTI:** No, I understand.

17       But then to this point if Mr. Arendas admittedly sees this
18   fee on his statement and he thinks:  Gosh, they can't charge me
19   this.  This is improper.  This doesn't apply to my account.

20       Then I don't see why even in that circumstance as to just
21   him he wouldn't be obligated to say in writing:  This is an
22   improper fee.  Don't charge this to my account.  Please reverse
23   this.

24       And he's the kind of person -- you know, we're only
25   talking about one.  If you talk about another consumer and

```
 1  under your reasoning, and they do it over and over and over
 2  again, then where do we wind up?
 3       That's why this provision is reasonable in the context of
 4  this --
 5            THE COURT:  I don't think so.
 6        I mean -- by the way, there are -- let's take the
 7  provision out.
 8       Okay.  There are all sorts of statute issues and, you
 9  know, limitations and so forth that are out there for any,
10  quote, breach of contract or unfair charge or so forth.
11       I'm not saying there should be no limitations at all.  I
12  can go back into my bank statements of 40 years ago and argue
13  about some unfair charge.
14       There are a whole set of what I would say non-negotiated
15  but statutory restrictions on when you can bring claims and so
16  forth and so on.
17       And I did give you -- I did grant you that there is some
18  merit to that -- to your particular argument, but I don't
19  translate it that the merit is so great on a uniform policy
20  instituted by a bank to, what do we say, hundreds of thousands
21  of consumers, that were thousands of consumers, that it has to
22  be adjudicated or made within 30, 60, 90 days of the charge.
23       I mean, I think that there is a nexus that's missing there
24  and I can't -- since I don't have to give an opinion as to when
25  it would be reasonable, I can just say this unreasonable and
```

```
 1  deal with it on that basis.
 2         But that's not to say at all that the underlying dispute
 3  wouldn't end up in your favor.  It just means that this
 4  particular provision isn't going to kick the case out.
 5              MS. SIMONETTI:  Okay, your Honor.  I don't want to
 6  take up your time.  Obviously, you've thought this through and
 7  if there are any additional --
 8              THE COURT:  Well, I --
 9              MS. SIMONETTI:  There is no point.
10              THE COURT:  Nothing else this morning.  Thank you.  I
11  appreciate that.
12         So what do you want to do?  How do we want to proceed in
13  this?
14              MS. SIMONETTI:  We don't have any other dates, I
15  think.
16              MR. McCUNE:  I think we should get a trial date, your
17  Honor.
18              THE COURT:  Everybody wants a trial date.
19              MS. SIMONETTI:  March, 2014?
20              THE COURT:  No.  Unless you're telling me you're
21  going before Judge Cahill.
22              MS. SIMONETTI:  I like Judge Cahill.  You never know.
23  But I think we have actually gone before Judge Infante.
24              THE COURT:  And Judge Infante couldn't settle this?
25  Didn't he scream at both of you?
```

```
 1           MS. SIMONETTI:  He always screams.
 2           MR. McCUNE:  We got our share.
 3           THE COURT:  Go back to Judge Infante, if you like.
 4   I'll pick a date, but I want to do it this year.
 5           MR. McCUNE:  That's fine.
 6           MS. SIMONETTI:  Okay.  November, December?
 7           THE COURT:  Oh, November sounds nice.
 8           MS. SIMONETTI:  Okay.
 9           THE COURT:  So let's do it -- let's do it
10   November 4th.
11           MS. SIMONETTI:  November 4th.
12           THE COURT:  Pretrial October 21st.  And I'd like to
13   see you back here in July, tell me how it's going; June or
14   July, August.
15           MR. McCUNE:  And like the last case, your Honor,
16   we're going to be -- we need to file a motion for class
17   certification.
18           THE COURT:  You file anything you want to do.  I
19   don't care.  Pick your dates.
20      Oh, well, if you're going to file a motion for class
21   certification, then I will see you back here before then.
22   That's fine.  I don't need to set any other dates.
23           MS. SIMONETTI:  All right, your Honor.  Thank you.
24           MR. McCUNE:  Thank you.
25           THE COURT:  Do you want a copy of your manual or do I
```

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

```
 1  get to keep it?
 2              MS. SIMONETTI:  Your Honor, I have plenty.  Thank
 3  you.
 4              THE COURT:  Thanks.
 5              (Proceedings adjourned.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATE OF REPORTER

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*[Signature: Debra L. Pas]*

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Wednesday, February 27, 2013