Michael W. Sobol (State Bar No. 194857)
*msobol@lchb.com*
Roger N. Heller (State Bar No. 215348)
*rheller@lchb.com*
**LIEFF, CABRASER, HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3336
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Richard D. McCune (State Bar No. 132124)
*rdm@mccunewright.com*
Jae (Eddie) K. Kim (State Bar No. 236805)
*jkk@mccunewright.com*
**MCCUNE & WRIGHT, LLP**
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD S. ARENDAS, as an individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CITIBANK INC., CITIBANK (WEST) FSB, CITIBANK, N.A. AND CITIBANK FSB, and DOES 1 through 125,<br><br>        Defendants. | Case No. 3:11-cv-06462-CRB<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    March 21, 2014<br>Time:    10:00 a.m.<br>Judge:   Hon. Charles R. Breyer |

1

## NOTICE OF MOTION

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3       **PLEASE TAKE NOTICE** that on March 21, 2014, at 10:00 a.m., in the Courtroom of

4   the Honorable Charles R. Breyer, United States District Judge for the Northern District of

5   California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Ronald Arendas

6   ("Plaintiff") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure

7   23, for the entry of an Order:

8       1.      Preliminarily approving a proposed Settlement Agreement and Release

9   ("Settlement"), entered into between Plaintiff, on behalf of himself and all others similarly

10  situated, and defendant Citibank, N.A. ("Citibank");[1]

11      2.      Certifying, for settlement purposes, the proposed Settlement Class, as defined in

12  the Settlement;

13      3.      Appointing Lieff Cabraser Heimann & Bernstein, LLP and McCuneWright, LLP

14  as Settlement Class Counsel representing the Settlement Class;

15      4.      Appointing Plaintiff Ronald Arendas as Class Representative representing the

16  Settlement Class;

17      5.      Approving the parties' proposed forms of notice and notice program, as set forth in

18  the Settlement, and directing that notice be disseminated pursuant to such program;

19      6.      Appointing Gilardi & Co. LLC as Settlement Administrator;

20      7.      Pending the final determination of whether the Settlement should be approved,

21  stay and enjoin Plaintiff and each Settlement Class Member (other than opt-outs) from

22  commencing, pursuing, maintaining, enforcing or prosecuting any Released Claims against any of

23  the Released Parties; and

24      8.      Setting a Final Approval Hearing and certain other dates in connection with the

25  final approval of the Settlement.

26      This motion is based on the accompanying memorandum of points and authorities, the

27

28  [1] The proposed Settlement is attached as Exhibit A to the Declaration of Michael W. Sobol, filed herewith.

MOT. FOR PRELIMINARY APPROVAL OF CLASS
                                          SETTLEMENT AGREEMENT; CASE NO. 3:11-cv-6462

1  Settlement and all exhibits thereto, the declarations of Michael W. Sobol ("Sobol Decl."), Richard

2  D. McCune ("McCune Decl."), and Tricia Solorzano filed herewith, the argument of counsel, all

3  papers and records on file in this matter, and such other matters as the Court may consider.

4

5  Dated: February 14, 2014                    Respectfully submitted,

6                                              By:    */s/ Michael W. Sobol*

7                                                     Michael W. Sobol

8                                              Michael W. Sobol (State Bar No. 194857)
                                               *msobol@lchb.com*
9                                              Roger N. Heller (State Bar No. 215348)
                                               *rheller@lchb.com*
10                                             **LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
11                                             275 Battery Street, 29th Floor
                                               San Francisco, CA  94111-3336
12                                             Telephone:  (415) 956-1000
                                               Facsimile:  (415) 956-1008
13

14                                             Richard D. McCune (State Bar No. 132124)
                                               *rdm@mccunewright.com*
15                                             Jae (Eddie) K. Kim (State Bar No. 236805)
                                               *jkk@mccunewright.com*
16                                             **MCCUNE & WRIGHT, LLP**
17                                             2068 Orange Tree Lane, Suite 216
                                               Redlands, CA 92374
18                                             Telephone: (909) 557-1250
                                               Facsimile: (909) 557-1275
19

20                                             *Counsel for Plaintiff*

21

22

23

24

25

26

27

28

MOT. FOR PRELIMINARY APPROVAL OF CLASS
                                               SETTLEMENT AGREEMENT; CASE NO. 3:11-cv-6462

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     BACKGROUND .................................................................................. 2

        A.      Procedural History and the Claims in the Case ............................ 2

                *Amrhein v. Citibank* ........................................................... 2

                *Arendas v. Citibank* ............................................................ 4

III.    THE PROPOSED SETTLEMENT AND NOTICE PROGRAM ........................ 5

        A.      Provisional Certification of Settlement Class ............................. 5

        B.      The Settlement Fund .............................................................. 5

                1.      Payments to Settlement Class Members ........................ 6

                2.      Costs of Notice and Other Administrative Costs ............ 6

                3.      Attorneys' Fees and Expenses ..................................... 6

                4.      Service Award for Plaintiff ........................................ 7

                5.      The Claims Process .................................................. 7

                6.      Mailing of Settlement Payments .................................. 7

                7.      Disposition of Residual Funds ..................................... 7

        C.      The Notice Program ............................................................... 8

                1.      Mailed Notice ........................................................ 8

                2.      Settlement Website and Long-Form Notice ................... 8

                3.      Toll-Free Number .................................................... 9

        D.      Opt-Out Procedure ................................................................ 9

        E.      Opportunity to Object ............................................................ 9

        F.      Mutual Release ..................................................................... 9

IV.     ARGUMENT ...................................................................................... 9

        A.      The Class Action Settlement Approval Process ........................... 9

        B.      Certification of the Proposed Settlement Class is Appropriate ................ 10

                1.      Rule 23(a) is Satisfied. .............................................. 10

                2.      The Requirements of Rule 23(b)(3) are Satisfied. .......... 12

        C.      Preliminary Approval is Appropriate .......................................... 12

                1.      The Settlement is the Product of Serious, Arms-Length Negotiations Following a Thorough Investigation By Plaintiff's Counsel. ................................................. 13

                2.      The Settlement is Fair, Reasonable, and Adequate, Particularly in Light of the Risks of Ongoing Litigation. ............. 14

                3.      The Recommendation of Experienced Counsel Favors Approval. .............................................................. 15

**TABLE OF CONTENTS**
(continued)

Page

D.    The Proposed Forms of Notice and Notice Program are Appropriate and Should be Approved. .......................................................................... 16

E.    The Court Should Schedule a Fairness Hearing and Corresponding Dates. ..................................................................................................... 17

V.    CONCLUSION ................................................................................................ 18

1

**TABLE OF AUTHORITIES**

2

Page

3

**Cases**

4

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................................... 12

5

6

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ....................................................................................... 11

7

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ................................................................................. 12, 13

8

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974 ...................................................................................................... 16

9

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980) ..................................................................................... 13

10

11

*Frank v. United Airlines, Inc.,*
   216 F.3d 845 (9th Cir. 2000) ....................................................................................... 16

12

*Hanlon v. Chrysler Corp,*
   150 F.3d 1011 (9th Cir. 1998) ........................................................................... 10, 11, 13

13

*In re Heritage Bond Litig.,*
   2005 U.S. Dist. LEXIS 13555
   (C.D. Cal. June 10, 2005) ............................................................................................. 13

14

15

*In re Hienerg Techs., Inc. Sec. Litig.,*
   2006 U.S. Dist. LEXIS 99265
   (C.D. Cal. Sep. 25, 2006) ............................................................................................. 10

16

*In re Tableware Antitrust Litig.,*
   484 F.Supp.2d 1078 (N.D. Cal. 2007) ......................................................................... 13

17

*Jordan v. County of Los Angeles,*
   669 F.2d 1311 (9th Cir. 1982), ............................................................................... 10, 11

18

19

*Knight v. Red Door Salons, Inc.,*
   2009 U.S. Dist. LEXIS 11149
   (N.D. Cal. Feb. 2, 2009) ............................................................................................... 15

20

*Linney v. Cellular Alaska Partnership,*
   1997 WL 450064
   (N.D. Cal. July 18, 1997) ............................................................................................. 16

21

22

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
   244 F.3d 1152 (9th Cir. 2001) ..................................................................................... 12

23

*Otsuka v. Polo Ralph Lauren Corp.,*
   251 F.R.D. 439 (N.D. Cal. 2008) ................................................................................. 12

24

*Pilkington v. Cardinal Health, Inc.,*
   516 F.3d 1095 (9th Cir. 2008) ..................................................................................... 12

25

26

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ....................................................................................... 12

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ............................................................................... 12

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993).......................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................................... 10

*Wolin v. Jaguar Land Rover North Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010)...................................................................................... 12

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq* ............................................................................... 4

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 10

Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 11

Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 12

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................. 16

Fed. R. Civ. P. 23(e)(2) ...................................................................................................... 13

**Other Authorities**

4 *Newberg on Class Actions*, (4th ed. 2002)
   § 11.22 *et seq.* ................................................................................................... 10, 13

Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004)
   §§ 21.63 *et seq.* ...................................................................................................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff and Citibank have reached a Settlement fully resolving this matter.  By this motion, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and issue the other related relief requested herein.

Pursuant to the Settlement, Citibank will establish a common Settlement Fund, in a minimum amount of five million dollars ($5,000,000) and a maximum amount of seven million nine hundred thousand dollars ($7,900,000), from which Settlement Class Members will receive settlement payments on a claims-made basis.  All Settlement Class Members who submit a valid claim will receive a settlement payment.

The Settlement further provides for direct mailed notice to the Settlement Class, along with the establishment of a toll-free telephone number and a Settlement Website, where Settlement Class Members can obtain additional information, review the Settlement and other key case documents, and submit claim forms electronically.  The claim form and claim process are straightforward and user-friendly.

The Settlement follows significant litigation in this District and in the Southern District of Florida, is the product of arms-length negotiations between the parties and their experienced counsel who were well-informed about the legal and factual issues involved, and was reached with the assistance of an experienced and well-respected mediator, Hon. Edward A. Infante (Ret.) of JAMS.  The Settlement falls well within the "range of reasonableness" applicable at the preliminary approval stage.

Plaintiff and his undersigned counsel believe the Settlement to be in the best interests of the Settlement Class and wish to begin the court approval process that is required for all class action settlements.  Plaintiff therefore respectfully requests that the Court review the parties' negotiated Settlement—which is attached as Exhibit A to the accompanying Sobol Decl.—and issue an Order:

1.      Preliminarily approving the parties' proposed Settlement;

2.      Certifying, for settlement purposes, the proposed Settlement Class;

1    3.    Appointing Lieff Cabraser Heimann & Bernstein, LLP and McCuneWright, LLP

2    as Settlement Class Counsel;

3    4.    Appointing Plaintiff Ronald Arendas as Class Representative;

4    5.    Approving the parties' proposed forms of notice and notice program, and directing

5    that notice be disseminated pursuant to such program;

6    6.    Appointing Gilardi & Co. LLC as Settlement Administrator;

7    7.    Pending the final determination of whether the Settlement should be approved,

8    stay and enjoin Plaintiff and each Settlement Class Member (other than opt-outs) from

9    commencing, pursuing, maintaining, enforcing or prosecuting any Released Claims against any of

10    the Released Parties; and

11    8.    Setting a Final Approval Hearing and certain other dates in connection with the

12    final approval of the Settlement.

13    **II.    <u>BACKGROUND</u>**

14    **A.    <u>Procedural History and the Claims in the Case</u>**

15    ***<u>Amrhein v. Citibank</u>***

16    In August, 2008, Michael Amrhein contacted the law firm of McCuneWright, LLP

17    ("McCuneWright") regarding what he felt were unfair overdraft fees assessed on his Citibank

18    checking account.  McCuneWright, which had been involved in related litigation since 2005,

19    undertook an investigation of the potential claims against Citibank, including reviewing account

20    statements, reviewing account agreements, and talking to other customers.  Following that

21    investigation, McCuneWright notified Citibank that it intended to file suit.   McCune Decl., ¶ 6.

22    On November 7, 2009 Plaintiff Michael Amrhein filed a class action Complaint against

23    Citibank in the United States District Court for the Northern District of California, alleging that

24    Citibank was improperly assessing overdraft fees on debit card transactions.  The primary focus

25    of the claims related to allegations that Citibank was charging customers overdraft fees when

26    there were sufficient funds in the account to cover the transaction, as well as an allegation that

27    Citibank was engaged in re-sequencing debit card transactions at the time of posting.  Following

28    meet and confer, Plaintiff filed a First Amended Complaint on April 11, 2009, and after further

MOT. FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AGREEMENT; CASE NO. 3:11-cv-6462

1  meet and confer and the exchange of Rule 26 initial disclosures, Plaintiff filed a Second Amended

2  Complaint on June 5, 2009.  McCune Decl., ¶ 7.

3      During this period of time, the *Amrheim* case became the subject of a petition to the

4  United States Judicial Panel on Multidistrict Litigation ("JPML") regarding the coordination of

5  overdraft-related litigation against different banks into a single multidistrict litigation.  On June

6  16, 2009, the JPML ordered the creation of MDL No. 2036, and transferred the *Amrheim* case,

7  along with cases against certain other banks, to the Honorable James Lawrence King of the

8  United States District Court for the Southern District of Florida.  The *Amrhein* case was the only

9  case against Citibank transferred to MDL No. 2036.  McCune Decl., ¶ 8.

10      On July 7, 2009, Citibank filed a motion to dismiss the Second Amended Complaint,

11  which Plaintiff opposed.  The Court issued its ruling on the motion, rejecting the majority of

12  Citibank's arguments.  A third amended complaint (erroneously entitled Fourth Amended

13  Complaint) was filed on April 12, 2010.  Citibank answered that complaint on May 12, 2010.

14  The parties then exchanged written discovery, and Plaintiff's counsel reviewed a significant

15  document production by Citibank.  On August 2, 2010, Plaintiff's counsel took the deposition of

16  Susan Bridge, an executive Vice-President in the retail bank division, regarding the overdraft

17  practices of Citibank.  McCune Decl., ¶ 9

18      In the context of their ongoing discovery and investigation, Plaintiff's counsel identified

19  difficulties with pursuing claims based on allegations of re-sequencing, and became aware of a

20  potential breach of contract claim related to Citibank's charging of overdraft fees on debit card

21  transactions, which Plaintiff's counsel believed was inconsistent with certain language in

22  Citibank's consumer account agreement.  McCune Decl., ¶ 10.

23      After engaging in discovery practice, the parties scheduled mediation for January 24,

24  2011.  In preparing for the mediation, Plaintiff's expert reviewed and analyzed significant data

25  relevant to the assessment of potential class damages under multiple theories of liability,

26  including the potential breach of contract claim.  However, the parties determined that the matter

27  was not in a mediation posture and the mediation was cancelled.   The parties then resumed active

28  litigation. McCune Decl., ¶ 11.

1    On February 15, 2011, Plaintiff moved the court for leave to file a Fifth Amended

2    Complaint in order to specifically allege the unique breach of contract claim arising out of

3    Citibank's charging of overdraft fees on debit card transactions.  The Court denied Plaintiff's

4    motion to amend on March 8, 2011.  The parties then resumed active discovery.  Plaintiff moved

5    the Court for reconsideration of its order denying Plaintiff's request to file a Fifth Amended

6    complaint.  On September 7, 2011, the Court again denied Plaintiff's request for leave to file the

7    Fifth Amended Complaint. McCune Decl., ¶ 12.

8    Following additional discovery, the parties agreed to participate in mediation.  On

9    November 10, 2011, the parties mediated the breach of contract claims before the Hon. Edward

10   A. Infante (Ret.) of JAMS, and were unable to reach a resolution. Plaintiff's counsel informed

11   counsel for Citibank that Plaintiff intended to dismiss the *Amrhein* case as they were unable to

12   pursue the breach of contract allegations in the case.

13   On July 13, 2012, Citibank filed a motion to dismiss based on alleged lack of jurisdiction

14   stemming from a bankruptcy filing by Plaintiff Michael Amrhein.  On July 31, 2012, Plaintiff

15   filed a declaration stating he did not oppose the dismissal, and on August 1, 2012, the Court

16   dismissed the *Amrhein* case. McCune Decl., ¶ 13.

17   ### ***Arendas v. Citibank***

18   During the pendency of the *Amrhein* case, Plaintiff's counsel was contacted by Citibank

19   customer Ronald Arendas regarding what he believed to be unfair overdraft fees assessed to his

20   Citibank checking account.  On December 19, 2011, Plaintiff filed the current action in this

21   Court.  Docket No. 1  The *Arendas* action is grounded in the claim for breach of contract that

22   Plaintiff's counsel had identified during the course of their discovery and investigation conducted

23   in the *Amrhein* case.  Specifically, in this action, Plaintiff alleges that Citibank's consumer

24   account agreements do not permit Citibank to charge overdraft fees on approved debit card

25   transactions.  Plaintiff alleges claims for breach of contract and breach of the implied covenant of

26   good faith and fair dealing, unconscionability, conversion, unjust enrichment, and violation of

27   Cal. Bus. & Prof. Code § 17200 *et seq*.  Docket No. 1; McCune Decl., ¶ 14.

28   On March 12, 2012, Citibank answered the Complaint in this action, and filed a motion to

1   transfer the case to the Central District of California, which Plaintiff opposed.  On June 8, 2012,

2   this Court denied the motion to transfer.  Docket No. 19.  The parties thereafter engaged in

3   discovery.  Plaintiff propounded multiple sets of written discovery and secured an agreement

4   from Citibank that Citibank's document production in the *Amrhein* case could be utilized in the

5   *Arendas* case.  Plaintiff's counsel reviewed Citibank's document production.  Citibank deposed

6   Plaintiff Ronald Arendas on October 18, 2012.  McCune Decl., ¶ 15.

7        On November 2, 2012, Citibank filed a motion for summary judgment.  Plaintiff opposed

8   the motion.  On January 18, 2013, the Court denied Citibank's motion for summary judgment,

9   and set the matter for trial on November 4, 2013.  Docket No. 30.  Plaintiff then conducted

10  additional discovery in the case, before the parties agreed to engage in another mediation session.

11  On May 22, 2013, at the request of the parties, the Court continued the trial date to April 28,

12  2014.  Docket No. 33; McCune Decl., ¶ 16.

13       On August 6, 2013, the parties engaged in a second mediation session before Hon.

14  Edward A. Infante (Ret.) of JAMS.  During this session, the parties reached an agreement in

15  principle on key deal terms.  After an agreement in principle was reached on the merits, the

16  parties, with the assistance of the mediator, reached an agreement in principle regarding

17  Settlement Class Counsel's request for attorneys' fees and expenses.  Counsel for Plaintiff and

18  Citibank thereafter worked on finalizing the settlement papers.  McCune Decl., ¶ 17.

19  **III.**    **THE PROPOSED SETTLEMENT AND NOTICE PROGRAM**

20       **A.**    **Provisional Certification of Settlement Class**

21       Plaintiff seeks provisional certification of a Settlement Class, defined in the Settlement as:

22  "All Citibank customers in the United States who had one or more Accounts and who, during the

23  Class Period (from November 7, 2004 through, and including, July 1, 2010), were charged an

24  Overdraft Fee."  Citibank does not oppose certification of the Settlement Class for settlement

25  purposes only.  (Settlement, §§ 2.6, 2.25, V)[2]

26

27

---

28  [2]  It is estimated, based on Citibank's reasonably available records, that the Settlement Class
    includes approximately 910,000 persons.

MOT. FOR PRELIMINARY APPROVAL OF CLASS
                                SETTLEMENT AGREEMENT; CASE NO. 3:11-cv-6462

**B.** **The Settlement Fund**

Under the Settlement, Citibank will establish a common Settlement Fund. The minimum amount of the Settlement Fund will be $5,000,000 (the "Minimum Settlement Liability") and the maximum amount of the Settlement Fund will be $7,900,000 (the "Maximum Settlement Liability"). As described below, the amount of the Settlement Fund will depend on the number of valid claims that are submitted by Settlement Class Members. If the Settlement is approved and becomes final, the Settlement Fund will be distributed as follows:

**1.** **Payments to Settlement Class Members**

All Settlement Class Members who submit a Valid Claim (*see* Settlement, § 2.30) will receive a payment from the Settlement Fund. The amount of the settlement payments will be as follows:

(a) Twenty-five dollars ($25); or

(b) If the aggregate dollar amount of Valid Claims submitted (valued at $25 per claim) is less than the remaining amount of the $5,000,000 Minimum Settlement Liability, after administrative costs, Court-awarded attorneys' fees and expenses, and any Court-awarded service award are deducted, then each settlement payment will be increased on a pro rata basis such that the aggregate amount of settlement payments, administrative costs, Court-awarded attorneys' fees and expenses, and any Court-awarded service award will equal no less than the $5,000,000 Minimum Settlement Liability; or

(c) If the aggregate dollar amount of Valid Claims submitted (valued at $25 per claim) plus the administrative costs, Court-awarded attorneys' fees and expenses, and any Court-awarded service award would exceed the $7,900,000 Maximum Settlement Liability, then each settlement payment will be reduced on a pro rata basis such that the aggregate amount of settlement payments, administrative costs, Court-awarded attorneys' fees and expenses, and any Court-awarded service award will not exceed the $7,900,000 Maximum Settlement Liability. (Settlement, §§ 3.2-3.4)

**2.** **Costs of Notice and Other Administrative Costs**

The costs of disseminating notice to the Settlement Class, distributing settlement

1    payments to Settlement Class Members, and the other costs of the Settlement Administrator will

2    be paid from the Settlement Fund.  (Settlement, §§ 3.1(a)-(b), 3.5, VII, VIII)

3                        **3.**      **Attorneys' Fees and Expenses**

4         Settlement Class Counsel will separately apply for payment from the Settlement Fund to

5    compensate them for their work on behalf of the Settlement Class and for their litigation expenses

6    incurred in this litigation.  Settlement Class Counsel's application will be limited to seeking an

7    award of attorneys' fees in an amount not to exceed $1,975,000 plus reimbursement of their

8    litigation expenses in an amount not to exceed $100,000. [3]  (Settlement, § 3.1(c), XI.A)

9                        **4.**      **Service Award for Plaintiff**

10        Settlement Class Counsel will also petition the Court for a service award for Plaintiff, in

11   an amount not to exceed $5,000, to compensate him for his time and commitment on behalf of the

12   Settlement Class in this litigation.  (Settlement, § 3.1(d), XI.B)

13                       **5.**      **The Claims Process**

14        All Settlement Class Members may submit a claim for a settlement payment.  The claim

15   form will be substantially in the form attached as Exhibit 3 to the Settlement.  The deadline for

16   submitting claims will be seven (7) days prior to the Final Approval Hearing, and will be clearly

17   indicated in the notices.

18        Claim forms may be submitted electronically via the Settlement Website or by mail.  A

19   printable claim form will be available on the Settlement Website, and Settlement Class Members

20   may request a hard copy claim form by contacting the Settlement Administrator.  (Settlement, §§

21   2.3-2.4, 2.30, 8.1, Ex. 1-3)

22                       **6.**      **Mailing of Settlement Payments**

23        If the Settlement is approved and becomes final, within sixty days (60) following the

24   Effective Date, the Settlement Administrator will mail settlement payments to all Settlement

25   Class Members who submitted Valid Claims.  Settlement payments will be in the form of checks,

26   _____

27   [3] Settlement Class Counsel's fee and expense application, and the amounts that will be requested
     therein, will appropriately account for Settlement Class Counsel's commitments of time and
     resources in this litigation, the results achieved for the Settlement Class, the risks that Settlement
28   Class Counsel assumed in prosecuting this litigation, the complexity of the issues involved, and
     applicable law.

1   which will be valid for 180 days.  The Settlement Administrator will make reasonable efforts to

2   locate Settlement Class Members whose checks are returned in order to effectuate delivery of

3   such checks.  (Settlement, §§ 3.4, 3.6)

### 7.       Disposition of Residual Funds

5          Any funds remaining in the Settlement Fund one-year plus thirty (30) days after the date

6   the first settlement payment is mailed by the Settlement Administrator will be distributed: (a) to

7   the extent feasible and practical in light of administrative costs, as a secondary distribution, on a

8   pro rata basis, to those Settlement Class Members who previously received settlement payments;

9   and/or (b) if a secondary distribution is not feasible and practical, or if funds remain in the

10  Settlement Fund after a secondary distribution, as *cy pres* to the National Endowment for

11  Financial Education.  (Settlement, § 4.1)

### C.       The Notice Program

13         The Settlement includes detailed proposed forms of notice and a notice program that is

14  well-designed to ensure the best notice practicable under the circumstances of the pendency of

15  this litigation, the key terms of the Settlement, the claims deadline, Settlement Class Counsel's

16  fee and expense application, and class members' opt-out and objection rights.  The notice

17  program will be administered by the Settlement Administrator (Settlement, § VIII, Ex. 1-2)

### 1.       Mailed Notice

19         Summary notice, substantially in the form attached as Exhibit 1 to the Settlement, will be

20  mailed to Settlement Class Members via U.S. Mail.  To that end, Citibank will provide the

21  Settlement Administrator with a Class List that identifies the names and last known addresses of

22  the persons in the Settlement Class as reflected in Citibank's reasonably available computerized

23  records.  The Settlement Administrator will update all mailing addresses through the National

24  Change of Address database, and mail the summary notice to each person on the Class List.

25         To the extent summary notices are returned with forwarding address information, the

26  Settlement Administrator will re-mail the summary notice to the new address indicated and

27  update the Class List accordingly. (Settlement, §§ 8.4-8.7)

28

MOT. FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AGREEMENT; CASE NO. 3:11-cv-6462

### 2.     Settlement Website and Long-Form Notice

On or before the date mailed notice commences, the Settlement Administrator will establish a Settlement Website, where Settlement Class Members may submit claims electronically, obtain additional information about the Settlement, and access copies of: the Long-Form Notice (substantially in the form attached as Exhibit 2 to the Settlement); the Settlement; a printable claim form; the Complaint; and the Court's Preliminary Approval Order; and other case documents.  The web address for the Settlement Website will be included in the notices. (Settlement, §§ 2.29, 7.2(c), 8.1, Ex. 1-2)

### 3.     Toll-Free Number

The Settlement Administrator will also establish and maintain a toll-free number where Settlement Class Members can obtain additional information and request a hard-copy claim form. The toll-free number will be included in the notices.  (Settlement, § 7.3(c), Ex. 1-2)

### D.     Opt-Out Procedure

Any person within the Settlement Class definition may request to be excluded from the Settlement Class by sending a signed, written request to the Settlement Administrator by the deadline proscribed by the notice. (Settlement, § 8.2, Ex. 1-2)

### E.     Opportunity to Object

Settlement Class Members who do not timely and validly request exclusion may object to the Settlement, Settlement Class Counsel's fee and expense application, and/or the request for a service award for Plaintiff.  To be considered, an objection must be sent to the counsel for both parties and to the Clerk of the Court, at the addresses indicated in the Long-Form Notice,  must be postmarked by the deadline proscribed by the notice,  and must include the information proscribed by the notice.  (Settlement, § 8.3, Ex. 1-2)

### F.     Mutual Release

In exchange for the benefits provided by Citibank under the Settlement, Settlement Class Members will release Citibank and related entities from any claims they may have related to the issues in this case.  (Settlement, §§ 2.22-2.23, X)

IV. **ARGUMENT**

A. **The Class Action Settlement Approval Process**

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for approval of class action settlements:

(1)    Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

(2)    Dissemination of notice of the proposed settlement to the affected class members.

(3)    A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

*See* Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), §§ 21.63 *et seq.*  This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests.  *See* 4 Newberg on Class Actions, § 11.22 *et seq.* (4th ed. 2002) ("Newberg").

With this motion, Plaintiff respectfully requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement; appoint a Settlement Administrator; direct that notice be disseminated to the Settlement Class pursuant to the proposed notice program; and issue the related relief requested herein.

B. **Certification of the Proposed Settlement Class is Appropriate**

Certification of the Settlement Class, for settlement purposes, is appropriate because Rule 23(a) and Rule 23(b)(3) are satisfied.

1. **Rule 23(a) is Satisfied.**

a. **The Class is Too Numerous to Permit Joinder.**

A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  While there is no fixed rule, a class with at least 40 members is generally sufficiently large. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).  Here, there are hundreds of thousands of persons in the proposed Settlement Class. *Cf. In re Hienerg Techs., Inc.*

*Sec. Litig.*, 2006 U.S. Dist. LEXIS 99265, *7 (C.D. Cal. Sep. 25, 2006) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.") (citation omitted).

### b.      This Case Presents Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be one or more questions common to the class. *See Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); 1 Newberg § 3.10; *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). The claims against Citibank in this case raise common questions, including whether Citibank was permitted by the terms of its account agreements to charge overdraft fees on debit card transactions.

### c.      Plaintiff's Claims are Typical.

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require total identity between the representative plaintiff and class members. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Rather, typicality is satisfied so long as the named plaintiff's claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory." *Jordan*, 669 F.2d at 1322; *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Here, Plaintiff's claims stem from the same common course of conduct as the claims of the Settlement Class. Plaintiff and all persons in the Settlement Class have had bank accounts with Citibank and have been charged overdraft fees by Citibank on debit card transactions. All of their claims are based on allegations that Citibank was not permitted to charge such fees, and their alleged injuries flow from that common conduct. The typicality requirement is thus satisfied here.

### d.      Plaintiff and His Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class Members.

Rule 23(a)(4) requires that the representative plaintiff will "fairly and adequately" protect the interests of the class. The two-prong test for determining adequacy is: (1) Do the

1 | representative plaintiff(s) and their counsel have any conflicts of interest with other class

2 | members?; and (2) will the representative plaintiff(s) and their counsel prosecute the action

3 | vigorously on behalf of the class? *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003);

4 | *Hanlon*, 150 F.3d at 1020. Both prongs are satisfied here.

5 | First, Plaintiff's interests are aligned with, and not antagonistic to, the interests of the

6 | Settlement Cass. Plaintiff has the same interest as all Settlement Class Members in obtaining

7 | redress for the conduct at issue. *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where

8 | "each…plaintiff has the same problem").

9 | Second, proposed Settlement Class Counsel have extensive experience litigating and

10 | settling consumer class actions and other complex cases. They have demonstrated expertise in

11 | handling all aspects of class actions. *See* Sobol Decl., ¶¶ 3-5, Ex. B; McCune Decl., ¶¶ 2-5. They

12 | are well qualified to represent the Settlement Class Members. Moreover, Plaintiff and his counsel

13 | remain fully committed to advancing the interests of, and obtaining relief for, the Settlement

14 | Class Members, as evidenced by, *inter alia*, the terms of the proposed Settlement.

15 | **2.      The Requirements of Rule 23(b)(3) are Satisfied.**

16 | In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

17 | be satisfied. Here, the proposed Settlement Class satisfies Rule 23(b)(3), which permits a class

18 | action if the Court finds that "questions of law or fact common to class members predominate

19 | over any questions affecting only individual members, and that a class action is superior to other

20 | available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

21 | 23(b)(3). Common issues predominate here. That is particularly so given that, if the proposed

22 | Settlement is approved, there will be no need for a trial, and thus manageability of the class for

23 | trial need not be considered. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

24 | Moreover, a class action is superior to other methods of litigation where, as here, class

25 | treatment will promote greater efficiency and no realistic alternative exists. *See Local Joint Exec.*

26 | *Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.

27 | 2001); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008). Individual

28 | prosecution of the claims in this case is impractical. *Tait v. BSH Home Appliances Corp.*, 289

1    F.R.D. 466, 486 (C.D. Cal. 2012) ("superiority requirement is met '[w]here recovery on an

2    individual basis would be dwarfed by the cost of litigating on an individual basis.'") (quoting

3    *Wolin v. Jaguar Land Rover North Am.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).

4            **C.      Preliminary Approval is Appropriate.**

5            Public policy "strong[ly] . . . favors settlements, particularly where complex class action

6    litigation is concerned."  *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir.

7    2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs*

8    *v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

9            "[T]he decision to approve or reject a settlement is committed to the sound discretion of

10   the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

11   *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference

12   to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a

13   private consensual agreement negotiated between the parties to a lawsuit must be limited to the

14   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

15   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

16   whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; *see also*

17   Fed. R. Civ. P. 23(e)(2).

18          At the preliminary approval stage, a court need only find that the proposed settlement is

19   within the "range of reasonableness," such that dissemination of notice to the class and the

20   scheduling of a fairness hearing are worthwhile and appropriate.  4 Newberg § 11.25; *see also In*

21   *re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007).

22          The proposed Settlement here readily satisfies the standard for preliminary approval

23   because:  (a) it is the product of serious, arms-length negotiations between the parties, reached

24   after a thorough investigation and discovery by Plaintiff's counsel; (b) it provides strong relief for

25   Settlement Class Members, and is fair, reasonable, and adequate given the claims and the parties'

26   respective litigation risks; and (c) it was negotiated by, and is recommended by, experienced

27   counsel, and was reached with the assistance of a well-qualified mediator.

28

1

### 1. The Settlement is the Product of Serious, Arms-Length Negotiations Following a Thorough Investigation By Plaintiff's Counsel.

2

3    "Before approving a class action settlement, the district court must reach a reasoned

4    judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

5    among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290.  Where a settlement is the

6    product of arms-length negotiations conducted by capable and experienced counsel, the court

7    begins its analysis with a presumption that the settlement is fair and reasonable.  *See* 4 Newberg

8    § 11.41; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10,

9    2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

10        The Settlement submitted for the Court's consideration here is the product of arms-length

11   negotiations between the parties and their well-qualified counsel.  Plaintiff and Citibank engaged

12   in formal mediation before an experienced mediator, Hon. Edward A. Infante (Ret.) of JAMS,

13   and reached an agreement with the help of Judge Infante.  During the past months, counsel for

14   Plaintiff and Citibank have been working to finalize the settlement papers.  McCune Decl., ¶ 17.

15   Throughout these negotiations, the parties were represented by counsel experienced in the

16   prosecution, defense, and settlement of complex class actions.

17        The Settlement is also informed by discovery and by Plaintiff's counsel's ongoing

18   investigation and analysis of the factual and legal issues in these cases, and follows significant

19   litigation.  Prior to filing both the initial *Amrhein* suit and this current suit, Plaintiff's counsel

20   investigated the factual issues involved and the potential claims.  Those efforts continued after the

21   suits were filed, and included ongoing factual investigation and legal research, including in

22   connection with litigating the motions that were filed.  McCune Decl., ¶ 18.  Plaintiff's counsel

23   also conducted formal discovery, including propounding written discovery requests, reviewing

24   numerous documents produced by Citibank, and deposing a corporate designee of Citibank.  This

25   discovery significantly informed Plaintiff's analysis of the issues and claims.  McCune Decl., ¶

26   19.  Moreover, in connection with the mediations, Plaintiff's counsel, along with their expert,

27   reviewed and analyzed data regarding overdraft fees assessed on debit card transactions, which

28   helped them to assess potential damages exposure.  McCune Decl., ¶20.

Moreover, there has been significant litigation, including overcoming a motion to dismiss, a motion to transfer, and a motion for summary judgment.  The Settlement submitted for the Court's review is informed by the rulings on those motions.  McCune Decl., ¶ 21.

### 2.   The Settlement is Fair, Reasonable, and Adequate, Particularly in Light of the Risks of Ongoing Litigation.

The Settlement provides substantial, valuable relief to Settlement Class Members.  All Settlement Class Members are entitled to submit claims, and all Settlement Class Members who submit a valid claim will receive a cash payment.  Moreover, the Settlement provides for a Minimum Settlement Liability of $5,000,000, ensuring that the Settlement Class will receive significant compensation.  The form of relief—cash payments—is appropriately tailored to the alleged harm in this case—i.e., the assessment of fees.

Moreover, the claim form (*see* Settlement, Ex. 3) is simple and straightforward, and the claims process is designed to make claim submission convenient for Settlement Class Members.  All claims may be submitted either electronically through the Settlement Website or by mail.

The results achieved for the Settlement Class Members pursuant to the Settlement is fair, reasonable and adequate, particularly given the potential risks of further litigation for Settlement Class Members.  Both liability and damages remain disputed in this case, as does the question of whether a class trial would be manageable.  Among other arguments and defenses that Citibank has asserted and/or indicated that it will assert are: (a) the terms of its consumer account agreements permitted it to charge the fees at issue; (b) its assessment of the fees at issue was consistent with customers' reasonable expectations; (c) the expectations of customers regarding the assessment of overdraft fees varied; (d) customers' own conduct caused or significantly caused the fees at issue; (e) Plaintiff cannot establish class damages; and (f) a class trial would be unmanageable.

While Plaintiff believes it can overcome these defenses, they are indicative of the risks and hurdles that Plaintiff and the Settlement Class would face should this matter proceed to trial and, if Plaintiff prevailed at trial, an inevitable appeal.  The proposed Settlement allows Settlement Class Members to avoid the risks of unfavorable rulings on these and other issues,

while still providing them considerable relief.

The Settlement also provides Settlement Class Members with another significant benefit that they could not receive if they proceeded to trial—prompt relief.  Proceeding to trial could add years to the resolution of this case, given the legal and factual issues raised and likelihood of appeals.

### 3.     The Recommendation of Experienced Counsel Favors Approval.

In considering a proposed class settlement, the recommendation of experienced plaintiffs' counsel should be given a presumption of reasonableness. *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at 5 (N.D. Cal. July 18, 1997).  Here, proposed Settlement Class Counsel endorse the Settlement as fair, adequate, and reasonable.  Sobol Decl., ¶ 6; McCune Decl., ¶ 22.

Settlement Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters, Sobol Decl., ¶¶ 3-5, Ex. B; McCune Decl., ¶¶ 2-5, and they have conducted an extensive investigation into the factual and legal issues raised.  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement.  Moreover, the key terms of Settlement were negotiated with the assistance of a mediator with considerable experience mediating class actions.  McCune Decl., ¶ 17.

### D.     The Proposed Forms of Notice and Notice Program are Appropriate and Should be Approved.

The proposed forms of notice and notice program here fully comply with due process and Fed.R.Civ.P. 23.  Rule 23(c)(2)(B) requires:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language:  the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).

- 16 -

In the context of a class settlement, the notice must also include a general description of the proposed settlement. *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  Notice sent to each class member "'who can be identified through reasonable effort'" constitutes reasonable notice.  *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

The proposed forms of notice here include the required information.  *See* Settlement, Ex. 1-2.[4]  Moreover, the proposed notice program—which includes direct mailed summary notice and a Settlement Website with long-form notice and access to key case documents—is appropriately tailored to ensure the best notice practicable under the circumstances.

Citibank will use its customer records to create a Class List, and the Settlement Administrator will use the contact information on that list to disseminate direct mailed notice. Appropriate additional steps will be taken to ensure the best distribution of the summary notice practicable, including running all mailing addresses through the National Change of Address database and appropriate measures to address instances where mailed notices are returned with forwarding address information.

The Settlement Administrator will also establish a Settlement Website, where Settlement Class Members can access the Settlement, the Long-Form Notice, hard-copy claim form, and other key case documents, and can submit claims for settlement payments electronically.

**E.      The Court Should Schedule a Fairness Hearing and Corresponding Dates.**

The next steps in the settlement approval process are to notify the Settlement Class of the proposed Settlement, allow Settlement Class Members an opportunity to exclude themselves or file objections, and hold a Final Approval Hearing.  Towards those ends, the parties propose the following schedule:

| Last day for Citibank to deliver the Class List to the Settlement Administrator. | **[30 days after entry of the Preliminary Approval Order]** |
|---|---|

---

[4] Additionally, the Settlement itself will be available for review on the Settlement Website. (Settlement, § 2.29, 8.1)

| | |
|---|---|
| Last day for the Settlement Administrator to complete the initial mailing of the Postcard Notice. | **[20 days after Citibank delivers the Class List to the Settlement Administrator]** |
| Last day for: (a) the Parties to file any motions in support of final approval of the Settlement; and (b) Settlement Class Counsel to file their Fee Application and request for a service award for the Class Representative. | **[45 days prior to the Final Approval Hearing]** |
| Opt-Out Deadline | **[30 days prior to the Final Approval Hearing]** |
| Objection Deadline | **[30 days prior to the Final Approval Hearing]** |
| Last day for the Parties to file any additional papers in support of final approval of the Settlement, responses to objections and any replies in support of Settlement Class Counsel's Fee Application. | **[14 days prior to the Final Approval Hearing]** |
| Claim Deadline | **[7 days prior to the Final Approval Hearing]** |
| Final Approval Hearing | **_____ ___, 2014 at _:_ _.m.** |

V.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order:

1.      Preliminarily approving the parties' proposed Settlement;

2.      Certifying, for settlement purposes, the proposed Settlement Class;

3.      Appointing Lieff Cabraser Heimann & Bernstein, LLP and McCuneWright, LLP as Settlement Class Counsel;

4.      Appointing Plaintiff Ronald Arendas as Class Representative;

5.      Approving the parties' proposed forms of notice and notice program, and directing that notice be disseminated pursuant to such program;

6.      Appointing Gilardi & Co. LLC as Settlement Administrator; and

7.      Pending the final determination of whether the Settlement should be approved, stay and enjoin Plaintiff and each Settlement Class Member (other than opt-outs) from commencing, pursuing, maintaining, enforcing or prosecuting any Released Claims against any of the Released Parties; and

MOT. FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AGREEMENT; CASE NO. 3:11-cv-6462

8.    Setting a Final Approval Hearing and other dates, as proposed herein, in connection with the final approval of the Settlement.

Dated: February 14, 2014                    Respectfully submitted,

By:   */s/ Michael W. Sobol*
          Michael W. Sobol

Michael W. Sobol (State Bar No. 194857)
*msobol@lchb.com*
Roger N. Heller (State Bar No. 215348)
*rheller@lchb.com*
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3336
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Richard D. McCune (State Bar No. 132124)
*rdm@mccunewright.com*
Jae (Eddie) K. Kim (State Bar No. 236805)
*jkk@mccunewright.com*
**MCCUNE & WRIGHT, LLP**
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Counsel for Plaintiff*

MOT. FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AGREEMENT; CASE NO. 3:11-cv-6462